**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS LLC,** | § | |
| *Plaintiff* | § | |
| | § | **W-20-CV-00574-ADA** |
| **-v-** | § | **W-20-CV-00577-ADA** |
| | § | **W-20-CV-00578-ADA** |
| **GOOGLE LLC,** | § | **W-20-CV-00581-ADA** |
| *Defendant* | § | **W-20-CV-00582-ADA** |
| | § | |

## MEMORANDUM IN SUPPORT OF THE COURT'S JUNE 2, 2021 CLAIM CONSTRUCTION ORDER

Pursuant to orders from the Federal Circuit, this Court submits the following memorandum in support of the claim constructions this Court entered on June 2, 2021. This Order does not alter any of those constructions.

### I.    BACKGROUND

On June 2, 2021, This Court submitted its final constructions for claim terms in *WSOU v. Google* cases 6:20-cv-00571 through 6:20-cv-00585. In each of the above-captioned cases, the parties subsequently jointly stipulated to final judgment for the purposes of facilitating WSOU Investments LLC's ("WSOU" or "Plaintiff") appeal of this Court's claim construction. *See WSOU Investments LLC. v. Google LLC*, Appeal Nos. 2022-1063, 2022-1064, 2022-10, 2022-1066, 2022-1067.

On December 6, 2021, this Court granted five indicative motions to supplement the record with additional claim construction analysis for the ten claim constructions at issue in the appealed companion cases. *See WSOU v. Google* Case Nos. 6:20-cv-574, -577, -578, -581, -582. Subsequently, on December 20, 2021, the Federal Circuit granted remand for the limited purpose of modification of records consistent with this Court's indicative rulings. *See WSOU Investments LLC. v. Google LLC*, Appeal Nos. 2022-1063, 2022-1064, 2022-10, 2022-1066, 2022-1067.

The terms at issue come from five asserted patents across the companion cases: U.S. Patent Nos.

8,965,045 (the "'045 patent"); 8,751,585 (the "'585 patent"); 9,335,825 (the "'825 patent"); 7,304,563 (the "'563 patent"); and 8,238,681 (the "'681 patent").

### A.    U.S. Patent No. 8,965,045 (the -574 Case)

The '045 patent relates to an image capture apparatus for tracking a moving object. '045 patent at Abstract. The apparatus includes a display to present the tracked object and the surrounding scene. *Id.* at 3:48-57, 10:8-16, 11:27-42. If the tracked object nears an edge of the field of view, the apparatus provides an output that notifies the user to adjust the apparatus before the tracked object is lost. *Id.* at 10:22-26, 12:17-21, 12:45-48.

### B.    U.S. Patent No. 8,751,585 (the -577 Case)

The '585 patent is directed to a specific method of managing electronic messages in an inbox by assigning a rule to selected messages that moves them to an archive location after a particular action is detected. '585 patent at Abstract.

### C.    U.S. Patent No. 9,335,825 (the -578 Case)

The '825 patent relates to an apparatus that uses a continuous wave doppler radar to detect a human gesture and interpret the detected gesture as a user input command. '825 patent at 2:27-29. The apparatus transmits radio signals that are reflected by a portion of the human body, such as a moving hand. *Id.* at 2:53-54. The reflection of the transmitted radio signals imparts a time-varying modulation to the radio signals, which is detected and used to identify one or more time-varying parameters that characterize the hand gesture that caused the signal modulation. *Id.* at 2:52-67, 4:19-45.

### D.    U.S. Patent No. 7,304,563 (the -581 Case)

The '563 patent, entitled "alarm clock," relates to a mobile communication terminal with a clock and memory that can store an alert time, and issue two types of alarms—one local and one remote resulting from a connection to another terminal. '563 patent at Abstract.

### E.      U.S. Patent No. 8,238,681 (the -582 Case)

The'681 patent relates to digital cameras that logically separate an area of interest into a plurality of parts, assign a focus value mask to each part, and then execute an autofocus algorithm. '681 patent at Abstract.

## II.      LEGAL STANDARD

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.*

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "Distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution

3

be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

"Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318.  Expert testimony also may be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### A.    Means-Plus-Function Claiming

A patent claim may be expressed using functional language.  *See* 35 U.S.C. § 112, ¶ 6.[1] *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 (Fed. Cir. 2015).  In particular, § 112, ¶ 6 provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*,

---

[1] The American Invents Act of 2011 changed the numbering of the relevant subsection from § 112, ¶ 6 to § 112(f). Because the substance of the subsection did not change, the undersigned will refer to the relevant subsection as § 112, ¶ 6 in keeping with the numeration at the time of the patent filing.

303 F.3d 1316, 1326 (Fed. Cir. 2002).

The presumption is that terms reciting "means" are subject to § 112, ¶ 6. *Williamson*, 792 F.3d at 1348. But if the term does not use the word "means," then it is presumed not to be subject to § 112, ¶ 6. *Id.* "That presumption can be overcome, but only if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020) (citing *Williamson*, 792 F.3d at 1349) (internal quotations removed). "The correct inquiry, when 'means' is absent from a limitation, is whether the limitation, read in light of the remaining claim language, specification, prosecution history, and relevant extrinsic evidence, has sufficiently definite structure to a person of ordinary skill in the art." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds by Williamson*, 792 F.3d at 1349.

When § 112, ¶ 6 applies, it limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347. Construing a means-plus-function limitation involves multiple steps. "The first step . . . is a determination of the function of the means-plus- function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). "[T]he next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id.* A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id.* The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id.* The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005). However, § 112, ¶ 6 does not permit "incorporation of structure from the written

description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).

For § 112, ¶ 6 limitations implemented by a programmed general-purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function, *i.e.*, the corresponding structure is a processor + algorithm. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339,1349 (Fed. Cir. 1999).  In this situation, the corresponding structure is not a general-purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). The algorithm may be described in "any understandable terms," such as "as a mathematical formula, in prose, or as a flow chart, or in any other manner that provides sufficient structure." *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013). Federal Circuit caselaw does not require that the patent describe an algorithm "if the selection of the algorithm or group of algorithms needed to perform the function in question would be readily apparent to a person of skill in the art." *Aristocrat Techs. Australia Pty Ltd. v. Multimedia Games, Inc.*, 266 F. App'x 942, 947-48 (Fed. Cir. 2008).

Finally, § 112, ¶ 6 does not apply when the claim itself describes the algorithm.  *St. Isidore Rsch., LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246, at *13 (E.D. Tex. Sept. 19, 2016).

### B.    Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2.[2] A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention

---

[2] *See supra* note 1.

with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.,* 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

In the context of a claim governed by § 112, ¶ 6, the claim is indefinite if the claim fails to disclose adequate corresponding structure to perform the claimed functions. *Williamson*, 792 F.3d at 1351–52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id.* at 1352. Computer-implemented means-plus-function claims are indefinite unless the specification discloses an algorithm to perform the function associated with the limitation. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1319 (Fed. Cir. 2012).

## III.    LEGAL ANALYSIS

The parties dispute the meanings of the ten terms relevant to this supplementation of the record. Two of the ten terms are agreed to be non-means-plus-function terms. Two are agreed to be subject to § 112, ¶ 6. The parties contest whether the remaining six are subject to § 112, ¶ 6.

### A.    Non-means-plus-function terms

The parties dispute the meanings of two non-means-plus-function terms.

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| "the terminal"<br><br>U.S. Patent No. 7,304,563 Claim 12 | Plain and ordinary meaning | Indefinite |
| "second part in between the first part and the second part"<br><br>U.S. Patent No. 8,238,681 Claims 1, 9, 16, and 24 | Plain and ordinary meaning | Indefinite |

1.   **"the terminal"**

Claim 12 provides:

12. A method for alerting a user of a mobile communication terminal, the method comprising:

[a] maintaining by a clock an indication of the current time;

[b] storing in a memory a definition of an alert time;

[c] issuing an alert when the current time matches the alert time by initiating a connection to another communication terminal over a network so as to cause that other terminal to locally signal the incidence of the connection incoming thereto;

[d] issuing an alert by the terminal locally signaling to the user;

[e] storing an indication in the memory of whether the alert is to be issued locally by the terminal; and

[f] issuing an alert by initiating a connection to the other communication terminal at a predetermined time offset from locally signaling to the user.

(annotations added).

WSOU contends that this term should be given its plain and ordinary meaning. -*581 Case*, ECF No. 33 at 9. WSOU points out the full claim term, which is in limitation [d], is "the terminal locally signaling to the user." '563 patent at 6:47-48. WSOU states that the language of Claim 12 is clear that "the terminal" derives its antecedent basis from "another communication terminal" in limitation [c]. *Id*. at 41–45. WSOU contends that the claim language of limitation [d] expressly gives context to "the terminal" by providing that it is "the terminal locally signaling to the user," which derives its antecedent basis from the claim element immediately above, specifically, "another communication terminal." *Id*.

WSOU explains that for the recitation of "the terminal" in the "storing" claim element that follows immediately after (*id*. at 6:49-50), the context of the claim language again shows "the terminal" there also derives its antecedent basis from "another communication terminal." Specifically, that claim

8

element recites "storing an indication in the memory of whether the alert is to be issued locally by the terminal." *Id*. Here, claiming that "the memory" derives its antecedent basis from "a memory" of "a mobile communication terminal" (*see id.* at 6:37-40), but for "the terminal," the claim language provides the context that because "the alert is to be issued locally by the terminal," again "the terminal" derives its antecedent basis from the same "another communication terminal" recited earlier in Claim 12. -*581 Case*, ECF No. 33 at 9.

Google responds that Claim 12 is indefinite because it plainly requires two different terminals— a "mobile communication terminal" ('563 patent, 6:37-38) and "another communication terminal" (*Id.* at 6:43- 44) —so a POSITA would not be reasonably certain to which of these two terminals "the terminal" in limitations [c] and [d] refers back to. -*581 Case*, ECF No. 34 at 6.

Google points to WSOU's argument that "the terminal" in limitation [d] derives antecedent basis from the "another communication terminal" because that terminal appears "immediately above" in the claim language. *Id*. at 6-7. Google counters that "the terminal" could just as easily be the "mobile communication terminal," because the '563 patent explains that the "another communication terminal" is not necessarily local to the user. '563 patent at 5:3-9 ("The alarm function as described above can also be used to wake people who are at different locations…. The alarm of the first type can then wake someone at the location of the phone, and the alarm of the second type can wake someone at the remote location."). When located remotely, the "another communication terminal" cannot "locally signal[] the user," thereby indicating that "the terminal locally signaling the user" could also refer to the "mobile communication terminal." -*581 Case*, ECF No. 34 at 7.

Google gives several more examples of scenarios where it finds "the terminal" is indefinite for lack of antecedent basis. Google points to claim 12, which also requires that "the other terminal" issue an alert at a "predetermined time offset from locally signaling to the user." '563 patent at 6:51-53. Google presumes that the antecedent basis for "the other terminal" in limitation [f] is "another

communication terminal" in limitation [c] because both use descriptors referencing that they are secondary. From the language of limitation [f], "the other terminal" is explicitly not locally signaling the user because it issues an alert at a time offset from locally signaling the user. Combining these two points, Google finds that this is another example where "another communication terminal" is not locally signaling to the user, and that "the terminal locally signaling to the user" could refer to the "mobile communication terminal." *-581 Case*, ECF No. 34 at 7.

Google's final example is that limitation [f] describes "storing an indication in the memory of whether the alert is to be issued locally by the terminal." '563 patent at 6:49-50. Google argues this second use of "the terminal" is also indefinite for lack of antecedent basis. The "storing" limitation indicates that there is a question as to whether "the alert" will be issued locally by "the terminal." In contrast, the previous "issuing" limitation defines "the terminal" as the one locally signaling the user.[3] This again creates a scenario where it is unclear whether both instances of "the terminal" refer to the same terminal. Google further notes that the reference to "the alert" in this limitation only compounds the confusion as to which terminal is "the terminal" being described, because there are also multiple "alerts" being issued in this claim, also lacking antecedent basis. *-581 Case*, ECF No. 34 at 7. Thus, Google contends that it is unclear throughout the claim whether both instances of "the terminal" refer to the same terminal. *Id*. at 8.

Google additionally argues that WSOU's construction improperly recaptures disclaimed subject matter. *-581 Case*, ECF No. 37 at 5. During prosecution, the Examiner rejected all of the independent claims in view of U.S. Patent No. 6,940,395 to the Steinmark reference. *Id*. In response, the applicant argued that "[t]here is no disclosure in Steinmark of an alert unit, which is both capable of producing a local signal itself via a signaling unit and also connecting over a network to a further communication

---

[3] Citing Cl. 12, Lim. [c] ("issuing an alert … by initiating a connection to another communication terminal over a network so as to cause that other terminal to locally signal the incidence of the connection incoming thereto").

terminal to cause that terminal to also activate an alarm signal." *-581 Case*, ECF No. 37, Ex. 14 (2006-08-16 Applicant Arguments/Remarks Made in an Amendment) at 10. Google contends that if WSOU is correct that every claimed local signal occurs on "another communication terminal" and both instances of "the terminal" indeed refer to "another communication terminal", claim 12 would extend to expressly disclaimed embodiments because no local signal would occur on the "mobile communication terminal". *-581 Case*, ECF No. 37 at 5.

WSOU responds to Google's arguments by repeating its assertion that in both instances "the terminal" can refer only to terminal B because of the requirement that "the terminal" locally signals the user. *-581 Case*, ECF No. 36 at 9–10. WSOU argues that Google only engages in hypotheticals instead of addressing the claim language which expressly recites "that other terminal to locally signal…", which provides the proper context for the term. *Id*. WSOU argues Google's reliance on the "offset" element is misplaced, as that element merely provides for initiating a connection at some time offset before the "other terminal" is to locally signal. *Id.* In other words, that element provides for two alarms, for example as taught by the exemplary embodiment where "the user is disturbed separately by each alarm." '563 patent, 4:47-5:2.

The Court finds that in both instances which "the terminal" is referenced in Claim 12, "the terminal" fails to provide reasonable certainty of claim scope because it is possible that it refers to either of "mobile communication terminal" (that alerts a user) (terminal A) or the "another communication terminal" (that locally signals) (terminal B). The proximity of the two terms, "another communication terminal and "the terminal," does not support a conclusion on its own that "another communication terminal" creates an antecedent basis for "the terminal." This is evidenced by WSOU's conflicting interpretation that "'the memory' derives its antecedent basis from 'a memory' of 'a mobile communication terminal'" but that "the terminal" in that same limitation derives its antecedent basis from "another communication terminal." Thus, the Court looks to the language of the patent to determine

whether it would be clear which type of terminal "the terminal" refers to. The Court finds there are numerous scenarios where the distinction is unclear.

Most notably, claim 12 requires that "the other terminal" issue an alert at a "predetermined time offset from locally signaling to the user." '563 patent at 6:51-53. Unlike the phrase, "the terminal" on its own, the phrase "the other terminal" presumably has the antecedent basis of "another communication terminal." A plain reading of this phrase leads to the conclusion that "the other terminal" is not locally signaling to the user, and that "the terminal locally signaling to the user" could refer to the "mobile communication terminal." This directly negates the contention that all instances of "the terminal" must be the ones "locally signaling".

WSOU's defense seems to be that the embodiment requiring that "the other terminal" issue an alert at a "predetermined time offset from locally signaling to the user," like the preferred embodiment, provides that "the user is disturbed separately" by two alarms. *-581 Case*, ECF No. 36 at 10. The preferred embodiment, however, requires that the first alarm "be signaled locally at the phone [terminal A]" and the second alarm "be generated by means of a call to another phone [terminal B]." '563 patent at 4:4-12. The preferred embodiment involves a local signal on both terminals A and B, which WSOU's construction differentiating the terminals by ability to locally signal would exclude.

Thus, the Court finds that a plain reading of the claim language in view of specification yields conflicting and inconsistent conclusions. A POSITA, faced with the claims and the specification, could not, with reasonable certainty, discern the meaning of which of the communication terminals is "the terminal." *See Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) (holding the term "said different IP Address" indefinite when the claim identified three different IP addresses, none of which was identified as "different").

### 2. "second part in between the first part and the second part"

WSOU contends that this term should be given its plain and ordinary meaning. *-582 Case*, ECF No. 33 at 20. WSOU cites *Nautilus* for the contention that indefiniteness must be evaluated in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910–11. To support this, WSOU points to the specification's description of an exemplary embodiment illustrated in FIG. 3 where the "AF sub-window of interest (310)" can be "logically separated into a plurality of parts which include a Mask 1 (340), Mask 2 (350) and Mask 3 (360)." '681 patent at 8:23-27. An annotated version of FIG. 3 is reproduced below highlighting Mask 1 (blue), Mask 2 (red), and Mask 3 (yellow):



FIG.3

*-582 Case*, ECF No. 33 at 21.

WSOU points out that the specification goes onto describe "where the plurality of parts of the at least one sub-window of interest comprise a first part closest to the center of the sub-window of interest, a third part farthest from the center of the sub-window of interest, and a second part in between the first part and the second part." '681 patent at 11:46-50. WSOU explains that the figure depicts the parts as follows: Mask 3 ("first part"), Mask 2 ("second part"), and Mask 1 ("third part") in FIG. 3 above. Using

13

this logic, WSOU contends the specification's description of a "second part" being "in between the first part and the second part" is merely describing the red-highlighted portion above. The red-highlighted portion is "in between" the boundary of the "first part" (illustrated as Mask 3 in FIG. 3) and the outer boundary of the "second part." -*582 Case*, ECF No. 33 at 21.

Finally, WSOU contends that it was this exact language, "second part in between the first part and the second part", that allowed the application to be issued by the examiner after an initial objection. *Id*. WSOU contends that this is evidence the language is not unclear. *Id*.

Google conversely contends that the claim is indefinite because it is nonsensical. -*582 Case*, ECF No. 34 at 26.  Google's contention is based on the self-referential language of the claim. The asserted claims recite "a second part in between the first part and the second part," which Google states is nonsensical on its face because it defines a part in reference to itself. *Id*. Using this logic, Google contends that a "second part" cannot be "in between" a first part and itself. *Id*.

Google points out that the same language is used in the specification, and further, that it is not written in error, as evidenced by the prosecution history. *Id*. at 27.

Based on the language of the claim and the specification, the Court concludes that the term is indefinite because it is nonsensical. *Horizon Pharma, Inc. v. Dr. Reddy's Labs. Inc*., 2021 WL 48428, at *4 (Fed. Cir. 2021) ("One circumstance in which claims are indefinite is where the claims, as properly construed, are nonsensical."). In this case, the self-contradictory language renders the claims indefinite. *See, e.g., Synchronoss Techs., Inc. v. Dropbox, Inc*., Case No. 1902196, slip op. at 12-13 (Fed. Cir. Feb. 12, 2021) (holding claims indefinite because "the asserted claims … are nonsensical and require an impossibility—that the digital medial file contain a directory of digital media files"). The language does not allow a reader to differentiate the first instance of "a second part" from the second. This leaves the nonsensical reading that the second part must be between the first part and itself.

WSOU asks the Court to read the language such that the claims would be applied as though they are recited "in between the boundary of the first part and outer boundary of the second part." *-582 Case*, ECF No. 33 at 21. However, this is not what the claim language says. Courts cannot rewrite claims, whether by express construction or through "plain and ordinary meaning" that deviates from the actual claim language. "[W]e do not redraft claims to contradict their plain language in order to avoid a nonsensical result." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 782 (Fed. Cir. 2010); *see Chef Am.,* 358 F.3d at 1374 (Fed. Cir. 2004) ("Even a nonsensical result does not require the court to redraft the claims."). Tellingly, WSOU's explanation requires use of the phrase "the third part" to specify what is actually meant by the claim. *-582 Case*, ECF No. 33 at 21.

Finally, the court is not persuaded that the claims are not indefinite because the Examiner allowed the claims without a rejection under Section 112, ¶ 2. *-582 Case*, ECF No. 33 at 27. "[I]f the Court were to accept this argument, no party could ever raise an indefiniteness challenge because every claim term ever held indefinite was originally approved by a patent examiner." *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, No. CV 12-2692 (JRT/LIB), 2016 WL 6832623, at *16 (D. Minn. Nov. 18, 2016).

## B.   Agreed means-plus-function terms

The parties dispute the meanings of two terms that they agree are subject to § 112, ¶ 6.

| Term | Plaintiff's Proposed Construction and Supporting Evidence | Defendant's Proposed Construction and Supporting Evidence |
|---|---|---|
| "issuing means for issuing an alert"<br><br>United States Patent No. 7,304,563 Claim 16 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** issuing an alert<br><br>**Structure:** antenna, communication engine, and loudspeaker, and equivalents thereof | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** issuing an alert<br><br>**Structure:** none; indefinite |

| "means for assigning a focus value mask to each of the plurality of parts of the at least one sub-window"<br><br>United States Patent No. 8,238,681 Claim 24 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** assigning a focus value mask to each of the plurality of parts of the at least one sub-window<br><br>**Structure:** See, e.g., processor (3:7-9; 10:18-22; 10:39-51; 10:57-63; 11:58- 12:3); 5:10-13; FIG. 3; 8:36- 52; 11:2-4 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** assigning a focus value mask to each of the plurality of parts of the at least one sub-window<br><br>**Structure:** none; indefinite |

### 1. "issuing means for issuing an alert"

The parties agree that this term is subject to 35 U.S.C. § 112, ¶ 6. *-581 Case*, ECF No. 33 at 10, *-581 Case*, ECF No. 34 at 8. The parties have a dispute regarding the corresponding structure recited by the specification.

Claim 16 recites an "issuing means for issuing an alert when the current time matches the alert time by initiating a connection to another communication terminal over a network…" ('563 patent at 7:1-5), and also recites "wherein the means for issuing an alert comprises signaling means for locally signaling to the user" (*Id.* at 7:6-7).

WSOU contends that the following part of the specification disclose structure:

> The mobile phone also has a communication subsystem 18 for communicating with a mobile telephony network. The communication subsystem comprises **antenna 19 and a communication engine 20**. The communication engine 20 is connected between the antenna and the processor 10. The communication engine handles conversion between base-band and radio frequency and handles signaling communications with the wireless network. At least some functional elements of the communication engine may be implemented on a common chip with one or more parts of the central processing unit.

*Id.* at 3:32-42 (emphasis added). Furthermore, WSOU points out that for locally signaling to the user, the specification recites "[p]referably, the said signaling is audible signaling. Preferably the audible

signaling is a ringtone." *Id.* at 2:57-58. And in an exemplary embodiment, the specification discloses various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were so equipped." *Id.* at 4:4-8. Accordingly, WSOU contends that the correct corresponding structure is "antenna, communication engine, and loudspeaker, and equivalents thereof. -*581 Case*, ECF No. 33 at 10.

Google counters that Claim 16 states that the "issuing means" performs the function of "issuing an alert" in two ways: (1) "by initiating a connection to another communication terminal over a network" ('563 patent at 7:2-3), or (2) "by causing the signaling means to locally signal to the user" (*id.* at 7:8-10). Google contends the '563 patent fails to disclose sufficient structure for either. -*581 Case*, ECF No. 34 at 8–10.

The passage that WSOU cites as structure for the first way of issuing an alert discloses "an antenna 19 and a communication engine 20" that is "connected between the antenna and the processor." -*581 Case*, ECF No. 33 at 15 (citing '563 patent at 3:32-42). Google argues this passage only provides the location of the communication engine and describes it in purely functional language, stating what it does rather than how it does it. -*581 Case*, ECF No. 34 at 8–10.

Moreover, Google argues that nothing in this passage relates to the claimed function of "issuing an alert . . . by initiating a connection to another communication terminal over a network." *Id.* at 7:1-3. Google argues that WSOU's cited passage shows that the disclosure is a general-purpose computer given that "[a]t least some functional elements of the communication engine may be implemented on a common chip with one or more parts of the central processing unit." '563 patent at 3:32-42. Google argues that a general-purpose computer is insufficient because the disclosed structure must be a "special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999); *see Aristocrat Techs* 521 F.3d at 1333 (requiring "the structure disclosed in the specification be more than simply a general purpose computer or

microprocessor"). Google contends WSOU's cited passage, nor anything in the patent, describes a structure or algorithm for "issuing an alert by initiating a connection to another communication terminal over a network." -*581 Case*, ECF No. 34 at 8–10.

Google contends there is also no structure for the second way of issuing an alert: "by causing the signaling means to locally signal to the user." *Id*.  Claim 1 provides that the "means for issuing an alert comprises signaling means for locally signaling to a user." '563 patent at 7:6-7. The parties agree that a loudspeaker is the structure by which the "signaling means" locally signal[s] to the user." -*581 Case*, ECF No. 33 at 8 (citing '563 patent at 2:57-58, 4:4-8). WSOU uses the same passages as structure for the "issuing means." However, Google argues that the "issuing means" does not perform the function of "locally signaling to the user"— that is the job of the signaling means, and thus is not corresponding structure. -*581 Case*, ECF No. 34 at 8–10.

WSOU counters that the specification also provides in another exemplary embodiment that "[t]he mobile phone may be operable in accordance with any suitable communications protocol. Examples include GSM and 3G (UMTS)." '563 patent at 3:45-47. WSOU argues that, as shown by the specification, initiating a connection to another communication terminal over a network was well known in the art. -*581 Case*, ECF No. 36 at 8. All that is required is the necessary hardware (i.e., antenna and communication engine). *Id*. To the extent an algorithm is required (which WSOU disputes because Google has not shown that the corresponding structure is not a special purpose processor), WSOU contends the above-cited passages provides that the algorithm was also well known in the art. *Id.*

For locally signaling to the user, WSOU points to the specification which recites "[p]referably, the said signaling is audible signaling. Preferably the audible signaling is a ringtone." '563 patent at 2:57-58. And in an exemplary embodiment, the specification discloses various ways to signal locally, such as "means of the loudspeaker" or "by means of a light or vibrating unit or by another form of local alerting device if the phone were so equipped" *Id.* at 4:4- 8. Google argues that "issuing means" does

not perform the same function of "locally signaling to the user." *Id*. However, WSOU contends that because the following claim elements expressly recite that the issuing means comprises signaling means, they include the structure for the signaling means: "wherein the means for issuing an alert comprises signaling means for locally signaling to the user." '563 patent at 7:6-7. And "wherein the means for alert issuing an alert issues the alert by causing the signaling means to locally signal to the user." *Id*. at 7:8-9.

The Court finds there is no dispute that the structure for "issuing means" must be more than the agreed structure for "signaling means." "Issuing means" performs the additional functions of (1) "initiating a connection to another communication terminal over a network" (*id*. at 7:2-3); and (2) "causing the signaling means to locally signal to the user" (*id.* at 7:8-10). "Where there are multiple claimed functions, as there are in this case, the patentee must disclose adequate corresponding structure to perform all of the claimed functions." *Media Rights Techs., Inc. v. Capital One Fin. Corp*., 800 F.3d 1366, 1374 (Fed. Cir. 2015). The question is whether the '563 patent discloses sufficient structure to perform those additional functions.

The Court finds that there is no sufficient structure given for "initiating a connection to another communication terminal over a network." The passage that WSOU initially cites as structure for the first way of issuing an alert discloses "an antenna 19 and a communication engine 20" that is "connected between the antenna and the processor." '563 patent at 3:32-42.  This passage, however, merely provides the location of the communication engine and describes it in purely functional language, stating what it does rather than how it does it. The court agrees that the disclosure of the required communication engine is a general purpose computer from the language: "[a]t least some functional elements of the communication engine may be implemented on a common chip with one or more parts of the central processing unit." Such "high level" disclosure of results to be obtained, but no detail as to how to perform the operation to achieve those results, does not satisfy Section 112, ¶ 6. *In re Aoyama,* 656 F.3d 1293,

1298 (Fed. Cir. 2011). Likewise, Figure 1 does not identify any structure for the communication engine, simply depicting it as an empty box 20. '563 patent. This is insufficient. A patent fails to provide adequate structure when it discloses only a "black box that performs [the] recited function. But how it does so is left undisclosed." *Blackboard, Inc. v. Desire2Learn Inc*., 574 F.3d 1371, 1383 (Fed. Cir. 2009).

WSOU's reply cites another exemplary embodiment in which the mobile phone operates in accordance with a "suitable communications protocol" such as GSM or 3G. *-581 Case*, ECF No. 36 at 11 (citing '563 patent at 3:45–47). WSOU argues that there is sufficient structure because connection over a network and an appropriate algorithm to do so, would have been well known in the art. *Id.* However, a "bare statement that known techniques or methods can be used does not disclose structure*." Biomedino, LLC v. Waters Techs. Corp*., 490 F.3d 946, 953 (Fed. Cir. 2007). "The inquiry is whether [a POSITA] would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing a structure." *Id*. Thus, WSOU's suggestion that a POSITA would be capable of implementing a structure to initiate a connection between terminals fails as a matter of law to show that the '563 patent discloses adequate structure for "issuing means for issuing an alert."

The Court finds that the structure for the second stated function ("causing the signaling means to locally signal to the user") is also insufficient. WSOU accurately points out that "wherein the means for issuing an alert comprises signaling means for locally signaling to the user." '563 patent at 7:6-7. It further points out structure for locally signaling the user. What is missing however is the structure of *how the issuing means causes* the signaling means to locally signal the user. The issuing means may indeed include the structure for the signaling means, however additional structure is required to show the steps for causing the signaling means to do so. The Court finds that said structure is not found in the patent.

Thus, the Court finds that this term is indefinite for failing to provide structure for both functions of the claim, however, the Court notes that failure to provide structure of either would on its own render the claim indefinite. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir. 2012). ("[W]here a disclosed algorithm supports some, but not all, of the functions associated with a means-plus-function limitation, [courts] treat the specification as if no algorithm has been disclosed at all.")

      **2.   "means for assigning a focus value mask to each of the plurality of parts of the at least one sub-window"**

The parties agree that this term is subject to 35 U.S.C. § 112, ¶ 6. *-582 Case*, ECF No. 33 at 23; *-582 Case*, ECF No. 34 at 29. The parties agree that the recited function is: "assigning a focus value mask to each of the plurality of parts of the at least one sub-window." *Id*. The parties have a dispute regarding the corresponding structure recited by the specification.

WSOU has identified several citations to the '681 patent addressing exemplary structure corresponding to the "means for assigning a focus value mask …" term. *See, e.g.*, "processor," '681 patent at 3:7-9; 10:18-22; 10:39-51; 10:57-63; 11:58- 12:3; 5:10-13; FIG. 3; 8:36- 52; 11:2-4. One example given is that the disclosure of the '681 patent links the claimed function to adequate corresponding structure by expressly stating that according to "the exemplary aspect of the invention above, the … means for assigning … comprises a processor. '681 patent at 3:7-8; *see also id*. at 10:18-22 (noting that the "embodiments of this invention may be implemented by computer software executable by a data processor of the … device 10, such as the main processor on board the device, or by hardware circuitry, or by a combination of software and hardware circuitry"). WSOU cites to several other sections of the patent as examples of structure without elaborating further. *-582 Case*, ECF No. 33 at 23 (citing '681 patent at 5:10-13; FIG. 3; 8:36-52; 11:2-4.)

In response, Google points out that WSOU's citations to the specification can be organized into two groups. *-582 Case*, ECF No. 34 at 29. Google contends that the first group consists of three

passages—5:10-13, 11:2-4, and 8:36-52—none of which disclose an algorithm to perform the claimed function. *-582 Case*, ECF No. 34 at 29. Google contends that the first two passages merely repeat the recited function without providing any structural detail to carry out that function. *Id*. (citing '681 patent at 5:10-13 ("a circuit for defining and assigning focus value masks for sub-windows of interest in accordance with the exemplary embodiments of the invention"); 11:2-4 ("assigning a focus value mask to each of the plurality of parts of the at least one sub-window")). Google contends further that the third cited passage of the first group has no relation to the claimed function of "assigning a focus value mask to each of the plurality of parts of the at least one sub-window." *-582 Case*, ECF No. 34 at 30.

Google argues that the remaining passages are insufficient as a matter of law because they simply refer to the fact that "embodiments of this invention may be implemented by computer software executable by a data processor." *Id.* (citing '681 patent at 10:18-22).

Based on the passages cited, the Court concludes that the term recites purely functional language without sufficient structure. The passages "a circuit for defining and assigning focus value masks for sub-windows of interest in accordance with the exemplary embodiments of the invention" and "assigning a focus value mask to each of the plurality of parts of the at least one sub-window" do nothing but repeat the stated function of "assigning a focus value mask to each of the plurality of parts of the at least one sub-window." '681 patent at 5:10-13; 11:2-4. "This type of purely functional language, which simply restates the function associated with the means-plus-function limitation, is insufficient to provide the required corresponding structure." *Noah Sys., Inc. v. Intuit Inc.,* 675 F.3d 1302, 1317 (Fed. Cir. 2012); s*ee Uniloc USA, Inc. v. Samsung Elecs. Am., Inc*., 809 F. App'x 863, 865 (Fed. Cir. 2020) (collecting cases holding same: "Merely describing the results of an unspecified algorithm in this manner, however, is not sufficient to satisfy the requirements of § 112 ¶ 6.").

Looking at further citations, the passage at 8:36-52 does not describe an algorithm for the stated function. The passage states:

> [I]n accordance with the illustration of FIG. 3, we propose *to compute the resulting focus value in overlapping sub-WOIs* is computed as a weighted calculation such as a sum of focus values from the three different masks. In a non-limiting embodiment of the invention the weight for the inner Mask 3 (360) is maximal and is represented by Value3, the weight for the Mask 2 (350) is represented by Value2, and the weight for the outer Mask 1 (340) is represented by Value1. According to the exemplary embodiments of the invention the *focus value for a sub-WOI* such as the sub-WOI 310 *may then be calculated* as:
>
> $FV_{sub-WOI\ 1} = Value1 * FV_{Mask1} + Value2 * FV_{Mask2} + Value3 * FV_{Mask3}$.
>
> Where Valuex represents a value such as a rational number or decimal value assigned to a corresponding focus value mask.

'681 patent at 8:36-52.

The Court finds that nothing in this passage describes an algorithm for assigning focus value masks, and WSOU does not attempt to explain why this passage does so in its brief. This passage describes computing a focus value—not "assigning a focus value mask" as claimed—from overlapping sub-windows—rather than "parts of at least one sub-window" as claimed. At most, this passage mentions using focus value masks as inputs for a calculation, but that is not the claimed function. There must be some disclosure of how a focus value mask is assigned. Further, the calculation is narrowly tailored to only overlapping sub-windows, and thus not relevant to the broader "parts of *at least one* sub-window." Structure "is corresponding only if the specification … clearly links or associates that structure to the function recited in the claim." *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003); *Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *3 (W.D. Tex. Jan. 23, 2020) (same).

Finally, the remaining citations refer to the fact that "embodiments of this invention may be implemented by computer software executable by a data processor." '681 patent at 10:18-22. This level of specificity is not enough, as it is required that "the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat,* 521 F.3d at 1333. The disclosed

23

structure must instead be "the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming*, 184 F.3d at 1349.

As such, the Court finds that the claim is indefinite for failing to disclose corresponding structure.

### C.      Potentially means-plus-function terms

Of the remaining six terms, WSOU contends that none are subject to § 112, ¶ 6. Google contends that all are subject to § 112, ¶ 6, and that all six terms are indefinite due to lack of corresponding structure.

As described in Section II.A above, when confronted with a term that may be subject to §112, ¶ 6, the first thing to do is determine whether that term is indeed subject to § 112, ¶ 6. The parties do not dispute that none of these terms use the word "means." Therefore, the presumption that these terms are not subject to § 112, ¶ 6 applies. *See Williamson*, 792 F.3d at 1349. Defendant can overcome this presumption if it can "demonstrate[] that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id*.

The following sections summarize WSOU's arguments as to why § 112, ¶ 6 does not apply, Google's response, and the Court's analysis for each term. Of the six terms, four contain common arguments about whether "processor" is used as a nonce term and have been grouped below.

| Term | Plaintiff's Proposed Construction and Supporting Evidence | Defendant's Proposed Construction and Supporting Evidence |
| --- | --- | --- |
| "said processor configured to provide a preemptive user output when the sub-set of pixels approaches an edge of the set of available pixels"

United States Patent No. 8,965,045 Claim 1 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.

But if Section 112, ¶ 6 applies, then:

**Function:** provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.

**Function:** provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels

**Structure:** none; indefinite |

| | | |
|---|---|---|
| | **Structure:** processor 4 | |
| "a collaborative application management processor configured to manage collaborative applications"<br><br>United States Patent No. 8,751,585 Claim 9 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.<br><br>But if Section 112, ¶ 6 applies, then:<br><br>**Function:** to manage collaborative applications<br><br>**Structure:** databases 107, 108, 109, database 110, databases 111, 112 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to manage collaborative applications<br><br>**Structure:** none; indefinite |
| "client management processor configured to enable the user to select an electronic message from the inbox"<br><br>United States Patent No. 8,751,585 Claim 9 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.<br><br>But if Section 112, ¶ 6 applies, then:<br><br>**Function:** to enable the user to select an electronic message from the inbox<br><br>**Structure:** message client 2 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to enable the user to select an electronic message from the inbox.<br><br>**Structure:** none; indefinite |
| "a detection processor configured to detect the action defined in the archiving rule assigned to the selected electronic message was carried out"<br><br>United States Patent No. 8,751,585 Claim 9 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.<br><br>But if Section 112, ¶ 6 applies, then:<br><br>**Function:** to detect the action defined in the archiving rule assigned to the selected electronic message was carried out<br><br>**Structure:** agent(s) 114a-114d | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to detect the action defined in the archiving rule assigned to the selected electronic message was carried out<br><br>**Structure:** none; indefinite |

| | | |
|---|---|---|
| "at least one memory and the computer program code are configured, with the at least one processor, to cause the apparatus to at least: detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus"<br><br>United States Patent No. 9,335,825 Claim 1 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.<br><br>Same as 1, doesn't argue initially in alternative,<br><br>**Function:** detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus<br><br>**Structure:** the processor, memory, and computer program code constitute corresponding structure. 8:40-43; 8:51-56; 8:62-67; 9:5-11:5 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus<br><br>**Structure:** none; indefinite |
| "alerting unit configured to issue an alert"<br><br>United States Patent No. 7,304,563 Claim 1 | Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite.<br><br>**Function:** issue an alert<br><br>**Structure:** 5:55; 3:21; 3:58-67; 4:18-20 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>The recited function is identical to the means-plus-function term in claim 16 ("issuing means for issuing an alert")<br><br>**Function:** issuing an alert<br><br>**Structure:** none; indefinite |

### 1. "processor" terms

WSOU contends that § 112, ¶ 6 does not apply to any of the listed terms referring to a processor. *-574 Case*, ECF No. 33 at 29; *-577 Case*, ECF No. 36 at 13. To defend this, WSOU cites to a number of cases rejecting claim construction arguments that "processor configured to …" invokes 35 U.S.C. § 112, ¶ 6 as lacking any structural connotation. *See e.g., Clear Imaging Research, LLC v. Samsung Electronics Co., Ltd.*, Case No. 2:19-cv-00326-JRG, 2020 WL 6384731, *8–9 (E.D. Tex. Oct. 30, 2020) ("that the

presumption against applying § 112, ¶ 6 to the 'processor ... configured to ...' terms stands."); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342 (Fed. Cir. 2020) ("'digital processing unit ... performing [functions]' found to be sufficiently definite structure in part because the claims provided operational context for the unit."); *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc*., 382 F. Supp. 3d 586, 660 (E.D. Tex. 2019), reconsideration denied, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019) (claim limitations reciting "device configured to … detect" were not means-plus-function limitations where "the claim language provides a description of how the processor is specifically programmed to operate"); *Realtime Data, LLC v. Rackspace US, Inc*., 2017 WL 2590195, Case No. 6:16-CV-00961 RWS-JDL *15–17 (E.D. Tex. June 14, 2017) (term "processor" in a claim reciting that the processor "was configured" to perform certain operations was not a means-plus-function limitation); *Cellular Commc'ns Equip. LLC v. AT&T, Inc.,* Case No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at *15 (E.D. Tex. Dec. 19, 2016) ("processor configured to" was not a means-plus-function limitation and would be given its plain meaning—"Here, 'processor' is not a 'nonce' term, but rather connotes a class of structures").

WSOU argues consistently that for each of the disputed terms using "processor" in question, the phrase "processor configured to" itself recites sufficiently definite structure and the remainder of the term further provides sufficiently definite structure by providing operational context for the processor. *-577 Case*, ECF No. 36 at 15. WSOU points out that in several of the claims, "processor" is introduced with certain additional structural descriptions—e.g., "a client management processor configured to…," "a detection processor configured to …," "a collaborative application management processor configured to …." *Id*. Relying on the conclusion that Section 112, ¶ 6 does not apply, WSOU does not point to any additional structure in its opening briefs. WSOU concludes that in the absence of any expert testimony

supporting a contrary conclusion, Google failed to rebut the presumption against application of § 112, ¶ 6 for these terms. -*577 Case*, ECF No. 40 at 13.

Google counters that there is not a categorical rule that the term "processor" avoids means-plus-function treatment. -*577 Case*, ECF No. 38 at 23. Google cites several cases for the contention that whether the term "processor" invokes Section 112, ¶ 6 requires a case-specific analysis. *See, e.g., Dyfan, LLC v. Target Corp.*, 6:19-cv-179-ADA, ECF No. 57 at 20 & n.4 (W.D. Tex. 2020) (applicants cannot "simply recite two nonce words—'processor' and 'code'—together in order to essentially write the claim in a means-plus-function format without being subject to § 112, ¶ 6."); *St. Isidore Research, LLC v. Comerica Inc.*, 2016 WL 4988246, at *14 (E.D. Tex. 2016) (construing term "processor configured to" as a means-plus-function limitation because the processor "is defined only by the function that it performs").

This Court finds that there is not a categorical rule excluding the term "processor" from means-plus-function treatment. Whether or not a claim term overcomes the presumption is a case-specific inquiry. *Diebold Nixdorf, Inc. v. ITC*, 899 F.3d 1291, 1299 (Fed. Cir. 2018). "[I]n appropriate cases, a party advocating that a claim limitation that does not recite the word 'means' is subject to § 112, ¶ 6 can overcome the presumption against its application solely by reference to evidence intrinsic to the patent." *Id.* at 1299–1300. Looking specifically at claim terms involving the term "processor", Section 112, ¶ 6 may not apply if the claims "describe how the data processor accomplishes the claimed functions." *St. Isidore Research,* 2016 WL 4988246, at *15.

Still, § 112, ¶ 6 applies to a claim term without the word means when the patent "*only* describes the term's function and interaction with other parts in the system" because "[t]his disclosure fails to provide sufficient structure". *Media Rts Techs., Inc.*, 800 F.3d at 1373 (Fed. Cir. 2015) (holding that "compliance mechanism" lacked sufficient structure because the language of the patent "only describes how the components of invention are combined and the functions performed by the 'compliance

mechanism,' without suggesting anything about the structure of the mechanism itself") (emphasis added); *see also Williamson*, 792 F.3d at 1351 ("[T]he claim does not describe how the distributed learning control module" interacts with other components … in a way that might inform the structural character of the limitation-in-question or otherwise impart structure").

Finally, WSOU's contention that expert testimony is required to challenge the presumption is rejected. *Diebold Nixdorf, Inc. v. ITC*, 899 F.3d 1291, 1299 (Fed. Cir. 2018) (holding "[N]one of our cases mandate that a party seeking to overcome the presumption against application of § 112, ¶ 6 can only do so by presenting extrinsic evidence that [a POSITA] would fail to understand that a term connotes a definite structure. Imposing such a requirement would be inconsistent with the Supreme Court's guidance.")

In its reply briefs, WSOU points to a number of passages it contends connote sufficient structure for each relevant claim term. *-574 Case*, ECF No. 36 at 21; *-577 Case*, ECF No. 40 at 11. Because the contended structure is different for each term, this court will analyze each separately. Still, some common arguments are made. The Court notes that throughout each of the contested terms, WSOU contends various "processors" are sufficient structure for claims including the phrase "means" (*see -582 Case*, ECF No. 33 at 23), and conversely that passages using the phrase "means" act as structure for claimed processors. *See e.g., -577 Case*, ECF No. 40 at 13 (cited structure for a collaborative application processor refers to a "collaborative application management **means**"); *-577 Case*, ECF No. 40 at 12 (cited structure for a detection processor refers to "**means** of detection to detect"). Interchangeable use of the words "means", "agents", and "processor" weigh towards concluding "processor" in the context of the contested patents is "tantamount to using the word 'means' thus invoking § 112, ¶ 6." *Id.* at 1350.

a. **"said processor configured to provide a preemptive user output when the sub-set of pixels approaches an edge of the set of available pixels"**

WSOU argues that structure is provided where, the specification describes, for example, preferred embodiments in which the processor is a "central processing unit" ('045 patent at 5:59-60; 6:16-17) that may comprise, for example, "processing circuitry 80 that is configured to read from and write to a memory 82" and that "may also comprise an output interface via which data and/or commands are output by the processor 4 and an input interface via which data and/or commands are input to the processor 4". *-574 Case*, ECF No. 36 at 22 citing '045 patent at 13:16-21. WSOU contends these exemplary disclosures reveal that the "processor" term "connot[es] structure representing what is generally known as a processor." *Optis Cellular Tech., LLC v. Kyocera Corp.*, No. 2:16- CV-0059-JRG-RSP, 2017 WL 541298, at *26 (E.D. Tex. Feb. 9, 2017). WSOU also points to disclosed interactions of the processor with various other structural components of the systems described—e.g., interaction of the 23 processor with a camera sensor, user input/output, and memory, as disclosed in Figs. 1-3, and 15A, and the respective corresponding descriptions. *-574 Case*, ECF No. 36 at 22. WSOU then points back to *Optis,* contending that such component interaction is consistent, for example, with the recitation in claim 1 of interrelated limitations directed to "a first and second picture" for both the "viewfinder display" and the claimed "processor" and by the requirement that the "processor" provide "a pre-emptive user output." *Optis Cellular Tech.*, 2017 WL 541298, at *26 ("the claims and specification provide specific connection and interaction with other structural components.")

Google counters that WSOU points to claim language stating when—not how—the claimed function is performed: "when the sub-set of pixels approaches an edge of the set of available pixels." *-574 Case*, ECF No. 39 at 20. Also citing *Optis Cellular Technology*, Google contends § 112, ¶ 6 applies because in the given passages "'processors' is meant [] to generically be anything that manipulates data." 2017 WL 541298, at *26 (E.D. Tex. 2017).

The Court finds that the claim term recites purely functional language. Specifically, the claim recites that the "processor" is configured to "provide a preemptive user output." As such, the code "is defined only by the function that it performs." *Cypress Lake Software, Inc.*, 382 F. Supp. 3d at 615. The remaining language only gives a condition for when the function is performed and does not provide any additional structure to the processor ("when the sub-set of pixels approaches an edge of the set of available pixels"). The Court finds that without additional structure, a "processor" is "a general-purpose component which, in this case, executes generic 'code.'" *Dyfan,* 6:19-cv-179-ADA, ECF No. 57 at 20 & n.4. Speaking to this point, the Federal Circuit "reject[s] the patentee's assertion that language describing when the computer would perform the function at issue constituted a sufficient description of the structure for performing the function." *Blackboard, Inc.* 574 F.3d at 1383.

Additionally, the Court finds that the language of the patent leads to the conclusion that "'processors' is meant [] to generically be anything that manipulates data." WSOU's own citations to the '045 patent make that clear: "processing circuity … is configured to read from and write to memory" and may comprise "interfaces" by which "data and/or commands are output by the processor [] and … input to the processor." '045 patent at 13:16- 21 (quoted at -*574 Case*, ECF No. 36 at 28). Accordingly, the "question is not whether a claim term recites any structure but whether it recites sufficient structure…. [Plaintiff] does not explain how its 'logic'— even assuming it connotes some possible structure…—amounts to sufficient structure for performing [the claimed] function." *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1373 (Fed. Cir. 2020). Because "processor "is defined by the patent to be generically something that manipulates data and because the language is purely functional, "processor" is being used in a manner "that is tantamount to using the word 'means' thus invoking § 112, ¶ 6." *Williamson*, 792 F.3d at 1350.

Where a general-purpose computer or microprocessor is called out as performing a claimed function, the corresponding structure is not a general-purpose computer but rather the special-purpose

computer programmed to perform the disclosed algorithm. *Aristocrat Techs.*, 521 F.3d at 1333. Because § 112, ¶ 6 applies and the corresponding structure is a special-purpose computer function, the specification must provide an algorithm for that function. *Function Media*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) ("When dealing with a 'special purpose computer-implemented means-plus-function limitation,' we require the specification to disclose the algorithm for performing the function."). WSOU does not argue in its briefing that any of the claim language discloses an algorithm. WSOU does however assert "a processor configured to" is structural because the claims disclose the processor's "component interaction." *-574 Case*, ECF No. 36 at 22–23. Looking at the relevant figures and descriptions, the claim only describes that the processor interacts with components such as a camera sensor, user input/output, and memory by illustrating examples of various apparatus "comprising" the listed component and a "processor." '045 patent at Figs. 1-3 and 15A. This does not meet the test of describing component interaction "in a way that might inform the structural character of the limitation-in-question or otherwise impart structure." *Williamson,* 792 F.3d at 1351.

Because the specification fails to disclose an algorithm that performs the claimed function, the Court finds that the claim is indefinite for failing to disclose corresponding structure.

### 2. "a collaborative application management processor configured to manage collaborative applications"

For the latter three disputed terms in question, WSOU points out that the claim does not refer only to a "processor configured to …," but each disputed term also introduces its respective "processor" with certain additional structural descriptions—e.g., "a client management processor configured to…," "a detection processor configured to …," "a collaborative application management processor configured to …." *-577 Case*, ECF No. 36 at 11. Google counters that the leading adjectives only state the intended function—i.e., "client management," "detection," and "collaborative application management." *-577 Case*, ECF No. 37 at 24. The Court finds these modifiers on their own do not connote structure. There

is no evidence that any of the three given adjectives has a generally understood structural meaning in the art or on their own provide structural significance. However, the Court finds they may aid in reciting structure if they tie a specific type of processor to its structural description.

WSOU contends that Google has not pointed to an intrinsic record that establishes that "processors" is meant here to generically be anything that manipulates data as opposed to connoting structure representing what is generally known as a processor. *-577 Case*, ECF No. 40 at 13. WSOU then points to the specification for structure: "the communication system 1 may also comprise **collaborative application management** means such as, in particular: **databases 107, 108, 109** enabling recording of data related to Wiki pages, collaborative FAQs, or blogs[;] **a database 110**, enabling storing of data related to RSS flows emitted by collaborative applications[;] **databases 111**, **112** enabling, among other things, storage of task information or planning information shared by different users 3, 31." '585 patent at 3:21-31 (emphasis added). WSOU argues that this intrinsic evidence directly refutes Google's conclusory attorney argument, offered without any supportive expert testimony, that the specification merely refers to a "collaborative application management means," without disclosing any corresponding structure. *-577 Case*, ECF No. 40 at 13.

Conversely, Google contends that while the claims use the term "processor," the specification uses either "means" or a well-known nonce word such as "agent" when discussing performance of the same functions. *-577 Case*, ECF No. 38 at 23. For example, the specification describes a "collaborative application management means," as opposed to a "collaborative application management processor." '585 patent at 3:21-22, 5:8-10.

Again, the Court finds that the term "processor" in the context of the '585 patent is used as a nonce word. WSOU's citation to the specification's description of a "collaborative application management means" for alleged structure for the claimed "collaborative application management processor" leads to the conclusion that the term "processor" is being used generically as an equivalent

to "means." -*577 Case*, ECF No. 40 at 13. This is bolstered by the self-referential language of the claim. The "processor" is defined only by the function of managing collaborative applications. This is true of both the prior modifier "collaborative management" and the passage following "processor", "configured to manage collaborative applications".

Like the previous "processor" term because § 112, ¶ 6 applies and the corresponding structure is a special-purpose computer function, the specification must provide an algorithm for that function. *Function Media*, 708 F.3d 1310, 1318 (Fed. Cir. 2013). The only structure WSOU points to is the above cited collaborative application management means comprising databases 107-112. '585 patent at 3:21-31. As discussed in a previous section, a list of components does not constitute an algorithm for a processor.  Further, the alleged structure that WSOU points to for the "collaborative management means" describes at most a set of databases, and not a processor. *Id*. Because the specification fails to disclose an algorithm that performs the claimed function, the Court finds that the claim is indefinite for failing to disclose corresponding structure.

### 3.   a client management processor configured to enable the user to select an electronic message from the inbox"

WSOU contends that the processor claim language in question recites analogous connection and interaction with other structural components. -*577 Case*, ECF No. 40 at 12. Regarding this contested term, WSOU contends that the "client management processor" is (1) structurally tied to "an electronic message client" and (2) "enable[ing] the user to select an electronic message from the inbox," where "the plurality of electronic messages" are qualified as being "stored in a message storage database" (also a structural component). *Id*. WSOU points to exemplary disclosure in the specification, such as, for example, the statement that "the electronic message client 2 enables the user, among other things, to select a message from the inbox to be transferred." '585 patent at 4:8-10

The Court likewise contends that this term is subject to § 112, ¶ 6.  The language uses processor as a nonce word to claim a means for the function "configured to enable the user to select an electronic message from the inbox ." While the claim requires that the "electronic message client" includes a "client management processor," and recites storage in a "message storage database," it does not recite how the "client management processor" is connected to or interacts with any structural components to perform a function. Rather, the language WSOU cites "only describes the term's function and interaction with other parts in the system." *Media Rts Techs*, 800 F.3d at 1373.

The Court similarly finds that there is no algorithm provided to give structure to the claim. WSOU's contention that "message client 2" gives structure is unconvincing, as it is defined by the exact same function it is supposed to be giving structure: "enabl[ing] the user, among other things, to select a message from the inbox to be transferred." '585 patent at 4:8-10. This language fails to answer *how* the function of selecting a message is performed. Using the surrounding language as an example, the description of "message client 2" acts as sufficient structure for the function of viewing messages. The specification describes that the function of enabling a user to view messages is performed via a viewing interface that allows the user to see all messages stored in a database. *Id*. Unlike the contested term, this description answers *how* the function of viewing messages is performed. While the simplicity of the function may mean only a simpler algorithm is required to disclose sufficient structure, "the fact that one of skill in the art could program a computer to perform the recited function cannot create structure where none is otherwise disclosed." *Williamson*, 792 F.3d at 1351. The Court concludes this term is indefinite for lack of corresponding structure.

        a. **"a detection processor configured to detect the action defined in the archiving rule assigned to the selected electronic message was carried out"**

WSOU contends that structure can be found in claim 9 of the '585 patent, which requires the "detection processor" to interact with other structural components, as expressed, for example, in the

requirement that it must be "configured to detect the action defined in the archiving rule assigned to the selected electronic message was carried out." *-577 Case*, ECF No. 40 at 12. WSOU contends that the "detection processor" logically cannot "detect the action . . . was carried out" unless the "detection processor" is structurally tied to at least the portion of the communication system carrying out that action. Finally, WSOU contends further that the following passage discloses sufficient structure: "[d]etection of the performance of an action is rendered possible by using different agents 114a to 114d as mentioned above that control the different means of the communication system." *Id*., citing '585 patent at 6:1-4.

Google responds that the specification does not describe a "detection processor," but rather a "means of detection to detect that the action attached to the said message has been carried out", and further describes that "[d]etection of the performance of an action is rendered possible using different agents". *-577 Case*, ECF No. 38 at 34, citing '585 patent at 2:50-51; 6: 1-2. These "agents" are depicted simply as black boxes in Figure 1. '585 patent at Fig. 1. Google contends that the specification provides no disclosure of how any of them perform the specialized function of detecting the various actions that take place throughout the communication system. *-577 Case*, ECF No. 38 at 34.

The Court contends that, for the same reasons as the other "processor" terms, this term is subject to § 112, ¶ 6. Interchangeable use of the words "means", "agents", and "processor" weigh towards concluding "processor" in this context is "tantamount to using the word 'means' thus invoking § 112, ¶ 6." *Williamson*, 792 F.3d at 1350.

The Court finds that again, no algorithm is disclosed in the specification, the cited structure is only defined by the function "detecting that an action was carried out." '585 patent at 2:50-51; 6:1-2.

    **4. "at least one memory and the computer program code are configured, with the at least one processor, to cause the apparatus to at least: detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus"**

WSOU contends again that a lack of means-plus-function language creates a presumption that the term is not a means-plus-function term. -*578 Case*, ECF No. 33 at 8. WSOU contends that in this case, the claim language alone provides sufficient structure. *Id.* (citing *LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1372 (Fed. Cir. 2006), *rev'd on other grounds sub nom*, 128 S. Ct. 28 (U.S. 2007) (ruling that term "control unit" in a claim limitation reciting "a control unit for controlling the communication unit, wherein the control unit comprises a [central processing unit ('CPU')] and a partitioned memory system" was not a means-plus-function limitation)). In LG, the Federal Circuit held that the presumption was not overcome because the "claim itself provides sufficient structure, namely 'a CPU and a partitioned memory system,' for performing the stated function, 'controlling the communication unit.'" *Id.* In the case at hand, WSOU points to the following language as connoting structure: "at least one memory and the computer program code are configured, with at least one processor, to cause the apparatus." -*578 Case*, ECF No. 33 at 8.

WSOU further contends that the term "program code" connotes specific structure in view of the detailed functional tasks recited in the body of the claim that the code had to accomplish. *Id.* Specifically, the claim language recites structure (e.g., the memory, program code, and processor) that then performs a specific set of functional tasks (e.g., the six functional tasks recited after "to cause the apparatus to at least"). *Id.* (citing *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, 4:18-CV-474, 2019 WL 4259020, at *30–32 (E.D. Tex. Sept. 9, 2019) (holding that that the presumption was not overcome where the claim language recited "a memory configured to store program code that includes instructions executable by said processor, said instructions comprising ….[reciting over a half dozen specific functional tasks].")).

Finally, to the extent the preamble invokes § 112, ¶ 6 (WSOU contends that it does not), WSOU contends that Google is improperly identifying the function by combining two separate elements that the apparatus performs. *-578 Case*, ECF No. 33 at 8. WSOU points out that the element "detect that an application is being started on the apparatus" is recited separately from the next element that starts "in response to the application being started on the apparatus, turn on a continuous wave doppler wave radar at the apparatus and transmit radio signals that comprise the continuous wave doppler radar …" "and transmit radio signals that comprise the continuous wave doppler radar…" *Id.* (citing '825 patent at 10:29-41). Finally, WSOU points out that the contested term omits the following language "and transmit radio signals that comprise the continuous wave doppler radar…". *Id.* (citing '825 patent at 10:29-41 ("The computer program instructions provide the logic and routines that enables the apparatus to perform the methods illustrated in FIG. 6. The processor 20 by reading the memory 22 is able to load and execute the computer program.")).

Google contends in opposition that "computer program code" and a "processor" are nonce terms, and that the addition of "at least one memory" does not add any meaningful structure. *-578 Case*, ECF No. 34 at 7. Google points to the specification for the contention that that a processor, memory, and program code are black-box placeholders requiring specific algorithms to perform the recited functions. *Id.* citing '825 patent at 5:12-18, 5:31-34.

Turning to step two of the inquiry, Google contends that the '825 patent does not disclose any structure or algorithm to perform the claimed functions of "detect[ing] that an application is being started," and "turn[ing] on a continuous wave doppler radar." *-578 Case*, ECF No. 34 at 8.

In its reply, WSOU responds to Google's arguments on both steps of the inquiry in turn. *-578 Case*, ECF No. 36 at 5-6. As to whether § 112, ¶ 6 applies, WSOU points to where it claims the specification describes structure for "processor", "memory", and "computer program code." *Id.* The following sections are cited as structure for these terms: "processor" "may . . . comprise an output

interface via which data and/or commands are output by the processor 20 and an input interface via which data and/or commands are input to the processor 20." ('825 patent at 5:22-23); "memory" "may be integrated/removable." (*Id.* at 5:45-47); and "processor 20 by reading the memory 22 is able to load and execute the computer program 24, 26." *Id.* at 5:33-34.

Regarding step two, WSOU contends that should § 112, ¶ 6 apply, the specification describes an algorithm, namely an "external event, such as an alarm, alert or other event may enable the controller 14," and correspondingly when the "enabled controller then enables the radio transmitter, radio receiver and gesture detector." *-578 Case*, ECF No. 36 at 6*, citing '825 patent at 8:40-43. Finally, WSOU points to various exemplary scenarios where there is a detection of an application (e.g., an incoming telephone call, an alarm alert, or when the user activates a remote control mode) being started and the "controller turns on the radar." *-578 Case*, ECF No. 36 at 6, citing '825 patent at 8:51-56; 8:62-67; 9:5-11.

While it is a more complicated inquiry, the Court finds that in the context of the '825 patent "computer program code" and "processor" are nonce words subject to § 112, ¶ 6. First, WSOU's citations to  "refer[] only to a general category of whatever may perform the specified functions." *Robert Bosch, LLC v. Snap-On Inc*., 769 F.3d 1094, 1099 (Fed. Cir. 2014). The '825 patent's description describes processors as having interfaces "via which data and/or commands are output … [and] input". '825 patent at 5:22-47. The cited figure depicts the processor as an empty rectangle without any structural detail (*Id.* at Fig. 2), and the specification explains that the processor executes various computer program instructions that are stored in memory. *Id.* at 5:22-47. This combination of elements only serves to define a general purpose computer. Applicants cannot "simply recite two nonce words— 'processor' and 'code'—together in order to essentially write the claim in a means-plus-function format without being subject to § 112, ¶ 6." *Dyfan,* 6:19-cv-179-ADA, Dkt. 57 at 20 & n.44; *See e.g., Rain Comp., Inc. v. Samsung Elecs. Am., Inc*., 2021 WL 786361, at *4 (Fed. Cir. Mar. 2, 2021) (holding that "disclosure of computer-readable media or storage devices" is insufficient structure combined with the

term "user identification module"); *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1280 (Fed. Cir. 2012) (the disclosed "processor and transceiver amount[ed] to nothing more than a general-purpose computer"); *Ergo Licensing, LLC v. CareFusion 303, Inc.,* 673 F.3d 1361, 1365 (Fed. Cir. 2012) ("control[ling] access to one or more software application packages to which the user has a subscription" requires more "than merely plugging in a general purpose computer.").

WSOU's contention that "program code" can perform a multitude of different, detailed functions only bolsters that it describes a general purpose computer. *See, e.g., Media Rts Techs*, 800 F.3d at 1372 (applying Section 112, ¶ 6 because "the claims simply state that the 'compliance mechanism' can perform various functions"); *Williamson*, 792 F.3d at 1350 (applying Section 112, ¶ 6 when the claim language "replaces the term 'means' with the term 'module' and recites three functions performed by the 'distributed learning control module'").

Moving to step two of the inquiry, the Court finds that the function "detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus" requires "special programming, *i.e.,* an algorithm." *Rain Comp., Inc,* 2021 WL 786361, at *8.

The Court finds that no algorithm is disclosed. WSOU's cited structure all points to *when* and not *how* the function is performed. '825 patent at 8:40-43; 8:51-56; 8:62-67; 9:5-11 . An "external event, such as an alarm, alert or other event *may enable* the controller 14," and correspondingly *when* the "enabled controller *then enables* the radio transmitter, radio receiver and gesture detector." *Id.* This does not suffice under § 112, ¶ 6. *Blackboard, Inc.*, 574 F.3d at 1383 (rejecting assertion that "describing when the computer would perform the function … constituted a sufficient description of the structure"). The structure missing is how an alarm or alert enables the controller, and then how the controller enables the apparatus. Describing only the "results of the operation of an unspecified algorithm" is insufficient.

*Aristocrat Techs* 521 F.3d at 1335. Further, a "bare statement that known techniques or methods can be used does not disclose structure*." Biomedino,* 490 F.3d at 953.

      **5.   "alerting unit configured to issue an alert"**

WSOU contends that a POSITA would understand the claim language to refer to structure, especially given that the claims provide that the "alerting unit comprises a signaling unit" ('563 patent at 5:55), and the specification provides certain exemplary embodiments where the specification provides a "Mobile phone 1 comprises a central processor unit 10" (*Id.* at 3:21), and processor 10 compares the real-time clock with the an alarm stored in memory 21, and when the clock matches the entered time and optionally date, the processor activates an alarm, such as by causing the loudspeaker 14 to emit a noise. *Id*. at 3:58-67. *-581 Case*, ECF No. 33 at 5. Further, WSOU contends the specification provides for a second type of alarm where "the processor generates the alarm of the second type by calling the telephone number." '563 patent at 4:18-20.

Additionally, in its brief regarding a similar set of terms, "signaling unit" and "signaling means", WSOU contends that under the doctrine of claim differentiation, if one claim element of a patent recites "means for" and an analogous claim element in another claim does not, this supports upholding the presumption against means-plus-function construction for the term that does not recite "means for." *-581 Case*, ECF No. 36 at 3 citing *Al-Site Corp. v. VSI Intern., Inc*., 174 F.3d 1308, 1318–19 (Fed. Cir. 1999).

Google contends that "alerting unit" and "signaling unit" are mean-plus-function limitations because "unit" is a classic nonce word and merely adding functional prefixes—such as "alerting" or "signaling"—does not provide structure to perform the recited functions. *-581 Case*, ECF No. 34 at 11. Google cites numerous cases for this proposition. *See Diebold,* 899 F.3d at 1297-1299 (holding that "cheque standby unit" is a means-plus-function limitation); *Dyfan*, 6:19-cv-179-ADA, Dkt. 57 at 20 ("broadcast short-range communications unit" did not "constitute sufficient structure to perform recited

function"); *Canon, Inc. v. TCL Elecs. Ltd*., 2020 WL 2098197, at *25–28 (E.D. Tex. 2020) (construing "connection unit," "detection unit," and "communication unit" as means-plusfunction terms); *Va. Innov. Sci., Inc. v. Amazon.com, Inc*., 2019 WL 4259020, at *24 (E.D. Tex. 2019) (same for "signal conversion unit"). As one court has reasoned: "A 'unit' could be almost anything. For example, when the function of an element is 'to reproduce,' it adds nothing to say that the structure is 'a reproducing unit'; it is simply a restatement of the function." *LG Elecs., Inc. v. Quanta Comp. Inc*., 2008 WL 4613054, *2 (W.D. Wis. 2008).

In response to WSOU's claim that "unit" must be different from "means" because of claim differentiation, Google cites to *Pickholtz v. Rainbow Techs., Inc*., for the language "the patent in this case provides no indication that the two terms mean different things … nothing in the patent itself explicates their relationship or indicates any difference in meaning." 284 F.3d 1365, 1373 (Fed. Cir. 2002); *-581 Case*, ECF No. 37 at 7. Google points out that in the case at hand, during prosecution, the applicant made identical arguments concerning the patentability of claim 1 and claim 16 (claim 19 during prosecution). *Id.* To overcome a prior-art rejection applied to both claims, the patentee referred to both as having an "alerting unit that is configured to issue the alert." *-581 Case*, ECF No. 37, Ex. 14 (2006-08-16 Applicant Arguments/Remarks Made in an Amendment) at 10–11. Thus, the intrinsic evidence never indicates that "unit" is anything more than a substitute for "means."

Mere substitution of "unit" for "means" cannot exempt "alerting unit" and "signaling unit" from § 112, ¶ 6. The Court finds that "alerting unit" has the same function as "means for issuing an alert." '563 patent at 5:47-58, 7:6-7. The Court finds that nothing in the patent differentiates the two terms, and further the interchangeability of "unit", "processor", and "means" throughout all patents at issue leads to the conclusion that none of these terms disclose sufficient structure in relevant claims. Here, the term "unit" is defined only by the function it performs, and as with other contested terms, this is true of both the prior modifier and the passage following "unit." As stated above, this Court has found that the '563

patent fails to disclose sufficient structure for "means for issuing an alert." Thus, the '563 patent fails to disclose sufficient structure for "alerting unit."

## IV.    CONCLUSION

For the reasons described herein, the Court enters the following final constructions for each of the disputed terms relevant to this supplement.


SIGNED this 9th day of March, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

| Term | Court's Final Construction |
|---|---|
| "the terminal"<br><br>United States Patent No. 7,304,563 Claim 12 | Indefinite |
| "second part in between the first part and the second part"<br><br>United States Patent No. 8,238,681 Claims 1, 9, 16, and 24 | Indefinite |
| "issuing means for issuing an alert"<br><br>United States Patent No. 7,304,563 Claim 16 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** issuing an alert<br><br>**Structure:** none; indefinite |
| "means for assigning a focus value mask to each of the plurality of parts of the at least one sub-window"<br><br>United States Patent No. 8,238,681 Claim 24 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** assigning a focus value mask to each of the plurality of parts of the at least one sub-window<br><br>**Structure:** none; indefinite |

| | |
|---|---|
| "said processor configured to provide a preemptive user output when the sub-set of pixels approaches an edge of the set of available pixels"<br><br>United States Patent No. 8,965,045 Claim 1 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels<br><br>**Structure:** none; indefinite |
| "a collaborative application management processor configured to manage collaborative applications"<br><br>United States Patent No. 8,751,585 Claim 9 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to manage collaborative applications<br><br>**Structure:** none; indefinite |
| "client management processor configured to enable the user to select an electronic message from the inbox"<br><br>United States Patent No. 8,751,585 Claim 9 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to enable the user to select an electronic message from the inbox.<br><br>**Structure:** none; indefinite |
| "a detection processor configured to detect the action defined in the archiving rule assigned to the selected electronic message was carried out"<br><br>United States Patent No. 8,751,585 Claim 9 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>**Function:** to enable the user to select an electronic message from the inbox.<br><br>**Structure:** none; indefinite |
| "at least one memory and the computer program code are configured, with the at least one processor, to cause | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. |

| | |
|---|---|
| the apparatus to at least: detect that an application is being started on the apparatus; in response to the application being started on the apparatus, turn on a continuous wave doppler radar at the apparatus"<br><br>United States Patent No. 9,335,825 Claim 1 | **Function:** to detect the action defined in the archiving rule assigned to the selected electronic message was carried out<br><br>**Structure:** none; indefinite |
| "alerting unit configured to issue an alert"<br><br>United States Patent No. 7,304,563 Claim 1 | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6.<br><br>The recited function is identical to the means-plus-function term in claim 16 ("issuing means for issuing an alert")<br><br>**Function:** issuing an alert<br><br>**Structure:** none; indefinite |